Good morning. May it please the court, Becky James for the plaintiff and appellant, Kelly Park. I'd like to reserve five minutes of my time for rebuttal, approximately, and I will watch my time. Nothing proves Ms. Park's point in this case more than the City's persistent attempt, even on this appeal, to accuse Ms. Park of being the woman who got away with murder and chastising her for having the chutzpah to challenge the constitutional violations that affected her. And it's exactly this presumption of guilt and the ends justify the means attitude that is at the core of the constitutional violations that are alleged in this civil rights lawsuit. At the outset, it's important to remember that this case was dismissed at the pleading stage. Under Rule 12b-6, the allegations in the complaint must be assumed to be true. And while the court, the Supreme Court, has discussed the pleading standard in Twombly and Iqbal, it's clear that plausible inferences must be accepted as well. And in this case, we have more than plausible inferences, more than sufficient facts, alleged to show constitutional violations. In particular, it's well established that substantial government interference with defense witnesses hampers the defendant's right to present a defense. And that's exactly what happened in this case. Detective Thompson took it upon herself to reach out to one of the, what could have been a very key defense witness here, Ms. Ayala, and make sure that she influenced her to tell her that they knew who the killer was, they had it, they had the killer, in fact she used that word, Ms. Park. John Gilmore did not, Supreme Authority did not kill Julianna Redding. And went on and on, and I think the court has the recording, and certainly put in the transcript as well, went on at length, without any particular inquiry from Ms. Ayala, to tell her that the defense investigators were liars, they couldn't be trusted, they were trying to get this woman off. And so through the conversation, this poor witness is left with, okay, well, geez, I guess I've been told that I shouldn't put Mr. Gilmore to blame, and I shouldn't believe these defense investigators, but as if that wasn't enough, then she ends up being charged, the same witness ends up being charged, and it seems just too much to be coincidental, ends up being charged, with her own offense, just shortly before Ms. Park's trial. So she ends, an offense relating to Mr. Gilmore, her accusations against Mr. Gilmore. So, of course, the witness has to take the Fifth Amendment, she's not available to testify. And if that weren't enough, Detective Thompson also went after other witnesses, Ronnie Case, who was a potential defense alibi witness, went out and visited him, threatened him with prosecution, he refused to testify, went out and talked to the Oxnard Police Department regarding Ms. Park's fiance. So, over and over again, Detective Thompson made sure that she manipulated the defense witnesses to ensure that she was able to get, in her hopes, in her hopes to get a conviction. Ms. Park, fortunately, was not convicted in this case. She was acquitted, notwithstanding the fact that her third-party culpability defense was precluded due to the conduct of Detective Thompson. And that's just a testament to the lack of other evidence that they had in this case. But that does not preclude, the fact of her acquittal does not preclude her civil rights claim here. This Court has clearly held in Halp v. Dillard that the fact of an acquittal does not erase a due process claim for purposes of Section 1983, it's not invalidated. And while the city argues that Halp v. Dillard has been effectively overruled by Chavez v. Martinez, that is just not the case. Chavez v. Martinez dealt with the Fifth Amendment and specifically relied on the text of the Fifth Amendment self-incrimination clause to say that the violation, the constitutional violation, the violation of the Fifth Amendment occurs in the use of testimony. And so a non-Mirandized statement doesn't meet the Fifth Amendment standard. But that's not what we're dealing with here. What we're dealing with here is very similar to what happened in Halp v. Dillard. In that case, it was the judge who was threatened, and here we have witnesses who were influenced. But the same principles are at stake, which is the defendant was denied a fair trial and she was denied in this case her opportunity to present a defense. And that caused an intrinsic harm, a lack of fairness in the proceeding against her, which she had to go through even though she was acquitted. She was not able to tell her story. As a result, the story will always be as the prosecution wanted it to be. And the story of her acquittal will always be as the prosecution wants it to be. She got away with murder. The jury just got it wrong. So definitely the fact that she was acquitted is fortunate for Ms. Park, but it certainly does not and cannot and should not eliminate her Section 1983 claim. So, Counsel, I think you hit on the issue in this case. I've read the transcript of what the detective did, and certainly at this stage in the proceedings, I'm not going to quibble with anything that you said. But I could not find a case that would permit relief when there is an acquittal. I saw a number of cases from other circuits when it says there's an acquittal, there's no materiality to the missing evidence or the Brady evidence. And my law clerk found a case from the 11th Circuit, I think it's called Kjelsen. My Nordic ancestors would probably behead me for getting that name wrong. But Kjelsen v. Mills, which is a Sixth Amendment case. It's 517F3-1232, and it is a Sixth Amendment compulsory process like this one. And the 11th Circuit in that case said there cannot be an action when there's an acquittal. So other than Haupt, are there any other cases you can point us to on your side of the ledger? Because I see a lot of cases on the other side of the ledger. Maybe not in the Ninth Circuit, but elsewhere. Is there any other circuit cases that can help you a little bit here? Well, Your Honor, I think, I mean, obviously, Haupt is controlling, because it is the Ninth Circuit, and even if the Sixth Circuit case were contrary, and I'm not, I'm sorry, I'm not immediately familiar with the case you're referring to. But we can certainly look it up and brief that if the Court would like. But as discussed, there is the other case, the Smith case, which does not decide the issue. But there's dispute in that case over the Brady issue. The cases you're referring to, most of the cases, to the extent there's a body of them out there, do deal with this Brady question. And I think the Brady question comes back, is somewhat similar to the Fifth Amendment problem, in that the Brady violation itself is defined in terms of materiality, in terms of, you know, did the government, there's only, the law states there's only a Brady violation if it was material to the outcome. So in the definite definition of that right is the need for a change and an effect on the outcome. But that's not the case here. And I think what's important here is looking back, and even if we go back to Carey v. Pythus, if we go back to what procedural due process is, which is not an overrope, what it really means, it means the ability to have fairness in the process, in the trial itself. I think if we look at some of the structural error cases as well, when there is just fundamental unfairness in the process itself, that is the violation. And I think in this case, the violation was, we have to look at when was the violation complete. So in the Fifth Amendment cases, in the self-incrimination, it's not, you know, it doesn't exist until the self-incrimination occurs. In the Brady context, it doesn't occur until, you know, the outcome is affected. But in the procedural due process and the compulsory process, Sixth Amendment and due process case situation, it occurs when the process is compromised. So Sixth Amendment is, the Sixth Amendment issue, well, I mean, we could say really the violation has to occur when she's not permitted to present her defense. Didn't the Supreme Court in Valenzuela-Bernal import the materiality requirement of Brady into Sixth Amendment compulsory process violations? Well, yeah, the deported case. In the deported witnesses cases. No, I think that situation is entirely different. In that case, the Supreme Court was looking at the balance. You know, it was an important consideration of the balance between the government's interest and necessity in deporting illegal aliens versus their requirement for testimony. And I think in that case, there was, they would find there's no, there's a good faith removal doesn't interfere, can't be viewed as interfering impermissibly with a Sixth Amendment right to compulsory process. But I think that's because of the circumstances that you have witnesses who can and should be deported. The right to compulsory process does not outweigh that. But here we have no such countervailing consideration. We've got a witness who had already spoken with the defense investigators who could and should have been available for the defense. There was no reason for her to be dissuaded from testifying, yet she was. So I think Your Honor is correct. There's not a lot of case law on this topic. I think help controls. But if the Court feels the need to reaffirm it on the post-Chavez, it should be reaffirmed. I think it does apply here. And it does, it's important to recognize for purposes of, the purposes behind Section 193 to deter misconduct are served by realizing that the violation occurs when it occurs. It's the violation of the person's rights that is at issue, not her right to win a trial. I said you wanted to save some time. I will. Yes, I will save my remaining time. Thank you, Your Honor. Thank you. Thank you. Good morning and may it please the Court. My name is Anthony Saratella, representing the appellee Karen Thompson, the Santa Monica police detective. I want to remind the Court that unlike the statement made in the appellant's opening brief that the appellant was falsely accused of murder, this is not a case where the appellant sued claiming either a false arrest, a false imprisonment, or a malicious prosecution under 1983. The crux of this case really amounts to the February 6, 2013, telephone conversation between Detective Thompson and Melissa Ayala. And we set out in our brief the context in which that telephone conversation occurred. The boyfriend of Melissa Ayala had spoken with Ms. Ayala, informed her that there were statements made by a defendant, a defense investigator, that he, the boyfriend, was the real murderer. And they tried to get Melissa Ayala to make certain statements, which ultimately the trial judge, Judge Kennedy, in the Superior Court ruled to be inadmissible. And I think that... This is a motion to dismiss, isn't it? Yes, it is. But, Your Honor, and I understand why the Court would ask that question. The complaint asks the Court to examine whether or not Ms. Park was afforded a fair trial in the Superior Court. How can one determine whether she was afforded a fair trial without examining exactly what happened in the Superior Court? And that's the reason why we believe that the judicial notice that Judge Kennedy gave in the proceedings was proper. The recording, which I believe the Court has available to it, of the telephone conversation, is pretty clear. We provided a transcript of that as well. There is no threats or coercive statements made by Detective Thompson to Melissa Ayala during that proceeding. But if you're making kind of a factual argument here, and it seems to me if we're going to go down that road, then we should have depositions or something to let the witness explain how she felt after hearing that call. It doesn't seem to me you win this case based on how we should read the transcript at a motion to dismiss stage. I'm not sure that's where you want to go in this case. Well, the appellant is asserting that her due process rights were violated by actions that were taken by Detective Thompson. Sure. And it's our position that she, Park, was afforded due process at at least two stages. One, when Judge Kennedy had three days' worth of hearings on the issue. And secondly, when Judge Otero reviewed all the evidence and ruled as he did. Now, I'd like to, if I may, very briefly, since the Court seems to be interested in this question, address exactly what happened in the Superior Court and in those three days of hearings. In the briefs filed by Ms. Park's attorneys, she argues that the reason that Ms. Ayala refused to testify is because she had been charged with a criminal offense. First of all, as we've shown, the criminal offense that Ms. Ayala was charged with was brought at the behest of another police agency. So, again, Counsel, now we're getting into a factual dispute as to why charges were brought. Your version is, and I understand why you're saying this, that it was a completely independent decision. Their version is that, no, it was somehow engineered. And this Court, we don't know the answer to that. That's why we have depositions and we gathered the evidence. You need to stick to the legal arguments. Why, even if we accept the allegations in their complaint as true, why do you still win? Well, I think that then you have to look at whether or not the judicial notice taken by Judge Otero was proper. And I preface that by stating that the decision to receive evidence is generally afforded an abuse of discretion standard on review. But more importantly, in order to challenge the judicial notice that was taken, the appellant had to show that the issues that were addressed in the judicially noticed matter was reasonably disputed. And she hasn't shown a reasonable dispute. She just argues that it's reasonably disputed. She was given an opportunity when she filed her Second Amendment complaint to make specific allegations, but she didn't do that. She made allegations on information or belief. She alleged that Thompson and or other detectives of the Santa Monica Police Department did X, Y, and Z. But this is not a case against other members of the Santa Monica Police Department. This is not a case against the city of Santa Monica. This is a case against Detective Thompson. And the fact is that the allegations were not sufficient. I would like to address the materiality standard and how that plays in with the fact that this is a 12B6 motion as opposed to a summary judgment motion. We have relied on the Iqbal standard of plausibility. And I need not remind the Court what the plausibility standard is because I'm sure every civil case that is up here on the 12B6 involves that issue. However, the question here is whether or not given the judicial notice that was properly taken by Judge Otero, Park has plausibly alleged a Section 1983 claim. And we believe that she has not. That in order to believe that an adequate claim has been asserted, the Court has to disregard everything that happened in the Superior Court proceedings. Now, I want to go back again to that. No, I think it seemed to me, and I'm interested in the question also, that Judge Owens was asking, at least your opponent, what is the law if the defendant is acquitted? Is it then material, assuming there was a violation? Is it material if it didn't affect the verdict? I'm not saying that that's dispositive, but I'm saying what is the law on that point? Well, again, I guess in order to decide whether the evidence was material in the first place, you have to look at California law involving the admissibility of third-party culpability evidence. And what I wanted to point out was several days after Melissa Ayala, I think Melissa Ayala asserted her Fifth Amendment rights on May the 10th. On May the 15th of 2013, Judge Kennedy held an additional hearing on the issue. There were cross motions and limine filed by the parties. The defendant in that case wanted to admit evidence of other acts allegedly committed by John Gilmore, Melissa Ayala's boyfriend, and earlier had been the boyfriend of the deceased party. And the prosecution wanted to exclude that evidence as improper character evidence and as improper evidence of third-party culpability under the standards established under People v. Hall, the California Supreme Court case governing third-party culpability evidence. I pointed out in our brief, of course, that this Court has affirmed that the Gilmore standard is valid and does not violate a defendant's rights. Counsel, if I could get back to Judge Reinhardt's question. I think, and my question as well, let's assume for a moment, as we know, there was an acquittal in this case. I hope I won't call her Ms. Walker. Ms. James will say that, well, that doesn't matter that there was an acquittal. I would assume your argument is, no, it does matter there's an acquittal, and here's why. She's going to point to the Haupt case and say, no, it doesn't. And I've cited some cases where it seems other circuits at least say it does. So forget about the evidence code and all these things. This is a matter of law. She says Haupt holds acquittal does not bar her case. Is she wrong? Yes. Why? She is wrong because, well, first of all, as you pointed out, there are no cases that would allow recovery in this circumstance. But she has analogized essentially to the Brady line of cases and, I think, by implication, the Warrant cases. Those cases all involve situations where actions by the police undermine the public's confidence in the verdict. And that's really what's critical here. How can she say, given that she was acquitted, that the public's confidence in the verdict can be undermined? In the Warrant cases, the issue- We've just had a few television shows about that question, where the public doesn't necessarily accept an acquittal of a defendant, but in a civil trial learns more that the defendant may actually have been the killer. Well, Your Honor, the deception by the officer is what is critical and what allows a due process claim to be made in the Brady context and in the search warrant context. Here, I want to remind the Court here that Thompson did not preclude Judge Kennedy from introducing the third-party culpability evidence. Judge Kennedy held an extensive hearing over a three-day period to determine whether or not that evidence was coming in, and she ruled that it wasn't coming in. The motion to exclude the third-party culpability evidence was made by the independent judgment of the prosecutor who presented the case. Karen Thompson didn't do that. I'm not sure I really want to hit off on this point, but Judge Kennedy said if that witness would testify, the one that the allegation is was wrongfully dissuaded, she said then that would be different. But, Your Honor, and the reason I mention the sequence of hearings is because Judge Kennedy made that statement at the time that Melissa Ayala asserted her Fifth Amendment privilege on May the 10th, but five days later, on May the 15th, Judge Kennedy held another hearing, and I'd just like to very briefly, since I only have two minutes left, I'd like to reiterate what Judge Kennedy said in ruling that the, in granting the motion eliminated by the people to exclude the third-party culpability evidence. And she said, and this is on the excerpts at pages 397, 398, and I believe 399, in my review of the case law, the defense has failed to establish the nexus, the nexus being between the commission of the actual offense and the person who's supposedly the third-party who's culpable for the offense. And you have not established, speaking to defense counsel, pointed me to any evidence that somehow connects Mr. Gilmour with the perpetration of the crime. There was no evidence that anybody saw him at the apartment at the time, no evidence of any forensic fingerprints, DNA, hair, clothing, anything else of Mr. Gilmour that associates him with the location of the offense. Any evidence that was recovered from Juliana Redding herself or from her property. Kennedy, I suppose there was evidence by Ms. Ayala that he told me he did it. But that's not what he said. No, it's not. And in fact, it's not. But let's assume that he did, or let's assume that he said to her, do you want to feel what it's like the way I choked this other lady? Do you want to experience that? Well, Judge Kennedy also, in the transcript, it's very clear that she was going to exclude that evidence as under 352, and because it was not reliable, and it was improper character evidence under California Evidence Code 1101. Those three reasons for the exclusion. And it was Judge Kennedy who excluded the evidence anyway. This is a lawsuit not against Judge Kennedy. It's not against the prosecutor. It's against Detective Thompson. And how is she responsible for what the judge did? And that's really the crux of this case, Your Honor. Okay. I think you would have done better to answer Judge Owen's question. Well, you've got 39 seconds left. We tried several times, I think, to get you. I think he said that there is no case law on this question, or that the case law is the same as in the Brady case. There is no specific case that would allow recovery in this circumstance, and this is not the right case to expand liability. That's our position, Your Honor. Okay. Thank you very much. Thank you. I think the Court is well aware that this is a 12-6 motion, and the issues that are being discussed regarding the facts of the case are really not what's at issue here. These questions are for the jury to decide. The legal question that I know the Court is most interested in is the issue of does her acquittal matter. And I'd like to come back to that question. I think it's important for the Court to distinguish between materiality and harm. And in the cases such as Valenzuela-Bernal, materiality, and even in the Brady context, materiality is talking about relevancy of the evidence and its ability, its capacity to affect the outcome. If you look at materiality in context. And certainly that was true here. This was material evidence. It might be a different argument if you could say, well, this wasn't really, what she did wasn't really material. Like, what she did didn't really matter. But this evidence was clearly material, and that's, in fact, why Detective Thompson presumably went to talk to Ms. Ayala and why there was the fight about it. This was material evidence. This was evidence that would have shown that indicated, given the jury reasonable doubt, certainly as to Ms. Park's guilt because it pointed the finger at someone else. But harm, on the other hand, is a different inquiry. That is for the jury to decide. So the violation has occurred. The violation of Ms. Park's right to present her defense has occurred, not only with Ms. Ayala but with the other defense witnesses as well, who were also dissuaded from testifying. So the course of conduct caused Ms. Park harm. The question of the extent of it and what that harm is is a question for the jury to decide. It becomes a question of damages. How was she harmed? What was the extent of the harm? Given that she wasn't convicted, that's not her harm. But certainly the fact that her story went to 48 hours and has been put out there to the world as she's the woman who got away with murder because this part of the story didn't come out, that's a harm. That's a real harm. And Section 1903 does not require proof of damages. It may turn out that the jury decides it's only $1. But that's for the jury, and it is for the jury to decide. I think in getting back to the Court's question about what cases permit this, I think maybe the right question is I think there is a case clearly that permits it, which is help. But perhaps a better question is what cases are out there that preclude it in this circuit? And there are none that I'm aware of, certainly not in this circuit. I think actually even the other cases from the other circuits are distinguishable, but I would like the opportunity perhaps to do a 28-J letter on that case. I would actually ask if both counsels could address in a 28-J letter that could jostle and apologize to my Nordic friends in the audience, but that case. Yes, Your Honor. I would appreciate that opportunity. But there are no cases in the Ninth Circuit that we've identified that would say that the acquittal does preclude this lawsuit. And for all the reasons I've stated, both policy of deterring misconduct, which is the policy behind Section 1983, and the practical reality that there is a real identifiable harm in being deprived of the right to present a defense. That is the constitutional violation itself, and that should be actionable regardless of the outcome of the trial. It's the right to a fair trial. It's not the right to win at trial that's at stake here. Unless the Court has any further questions. Thank you, Your Honor. Thank you, counsel. The case that's argued will be submitted.
judges: Reinhardt, Fernandez, Owens